UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF BRYAN DEBBS, et al., | No. 2:20-cv-01153-TLN-DB |
| Plaintiffs, | |
| v. | **ORDER** |
| COUNTY OF SACRAMENTO, et al., | |
| Defendants. | |

This matter is before the Court on Defendants County of Sacramento, Sacramento County Sheriff's Department, and Scott Jones's (collectively, "Defendants") Motion for Summary Judgment.  (ECF No. 28.)  Plaintiffs Estate of Bryan Debbs, Shelley Debbs, and Rigoberto Arriaga (collectively, "Plaintiffs") filed an opposition.  (ECF No. 29.)  Defendants filed a reply. (ECF No. 31.)  For the reasons set forth below, the Court GRANTS in part and DENIES in part Defendants' motion.

///
///
///
///
///
///

## I.   FACTUAL AND PROCEDURAL BACKGROUND[1]

Bryan Debbs ("Debbs") was taken into custody at the Sacramento Main Jail on May 24, 2019.  (ECF 29-3 at 2.)  As part of standard intake procedures, Debbs was medically assessed at the Main Jail.  (*Id.*)  Due to either Debbs's prior history or presentation to the intake nurse, Debbs was referred to Jail Psychiatric Services ("JPS") for assessment.  (*Id.* at 3.)  Mental health services in the Sacramento jails are provided by JPS pursuant to a contract with U.C. Davis Medical Center ("UCD").  (*Id.*)  JPS staff are UCD employees, not employees of the County.  (*Id.*)  Pursuant to the contract, UCD provides licensed staff for both the inpatient and outpatient programs at the jails.  (*Id.* at 4.)

All inmates that are housed in the Sacramento jails proceed through a classification process.  (*Id.*)  Outpatient psych ("OPP") is a classification type for those inmates identified as having psychiatric issues that would make general population housing difficult.  (*Id.* at 5.)  OPP inmates may be identified during their initial classification process or when they are interviewed by JPS.  (*Id.*)  OPP inmates are then housed with others with the same security level – minimum, medium, and maximum.  (*Id.* at 6.)  Both Debbs and Christian Ento ("Ento") were housed together on the OPP unit and classified as medium security OPP inmates on May 25, 2019.  (*Id.*)  On June 30, 2019, Debbs was placed on a pre-admit list for admission on the inpatient psychiatric unit, 2P, for grave disability.  (*Id.*)  On July 4, 2019, Ento was placed on the pre-admit list for admission to 2P for grave disability.  (*Id.*)  2P is a licensed Lanterman-Petris-Short ("LPS") unit.  (*Id.*)  Housing on 2P is by order of JPS only.  (*Id.*)

By order of the psychiatrist, Dr. Jason Roof, Debbs and Ento were moved from a cell on the OPP to the only double-bunked cell in the 2P unit (the "P1 cell") on July 7, 2019, at approximately 1:27 p.m.  (*Id.*)  The decision to house the two together in the P1 cell was the result of Dr. Roof's clinical judgment as the inmates' treating psychiatrist.  (*Id.* at 7.)  Debbs and Ento had previously housed together on the OPP unit for 43 days without incident.  (*Id.*)

///

---

[1]     The following facts are undisputed unless otherwise noted.

Custody staff conducts cell checks once every hour on the 2P unit, which requires a visual observation of the inmates in each cell to ensure the inmate is alive and not in any acute distress. (*Id.*)  2P is staffed by JPS employees 24 hours a day, seven days a week.  (*Id.*)  The psychiatrist may order visual observation by JPS staff on the 2P inmates every 30 minutes or every 15 minutes depending on clinical need, which may be supplemented with closed-circuit television monitoring.  (*Id.*)  County custody staff does not have access to the video feed from the cameras inside the cells on 2P — only JPS staff has access to this feed.  (*Id.*)

On July 8, 2019, registered nurse Sandra A. Venus ("Venus") and licensed vocational nurse Esther W. Muiruri ("Muiruri") were on-duty in the 2P unit, inside of the nurse station. (ECF No. 29-2 at 3.)  At approximately 2:33 a.m. that day, Deputy Toyama performed a cell check on the 2P housing unit.  (ECF No. 29-3 at 9.)  Nothing unusual was noted in the cell shared by Debbs and Ento during the 2:33 a.m. cell check.  (*Id.*)  JPS staff performed a welfare check at approximately 3:00 a.m. on the cell and noted Debbs and Ento lying down.  (*Id.*)  At approximately 3:30 a.m., Venus performed a welfare check on the cell.  (*Id.*)  When she looked in the cell, she saw Ento attacking Debbs and called for help.  (ECF No. 29-2 at 5.)  Deputies Toyama and Fuerstenberger ran to assist Debbs.  (ECF No. 29-3 at 9.)  The deputies summoned additional deputies and nursing staff to respond and summoned fire/ambulance assistance.  (*Id.* at 10.)  Debbs died from his injuries on August 3, 2019.  (*Id.*)

Plaintiffs filed this action on June 9, 2020.  (ECF No. 1.)  Plaintiffs filed the operative Second Amended Complaint ("SAC") on November 23, 2020, alleging the following claims: (1) a 42 U.S.C. 1983 ("§ 1983") claim against all Defendants for failure to protect in violation of the Eighth Amendment; (2) a § 1983 claim against Venus and Muiruri for interference with familial association in violation of the Fourteenth Amendment; (3) a § 1983 claim against Venus and Muiruri for interference with familial association in violation of the First Amendment; (4) a Rehabilitation Act claim against the County and Sheriff's Department; (5) an Americans with Disabilities Act ("ADA") claim against the County and Sheriff's Department; (6) a failure to summon medical care claim under California Government Code § 845.6 against all Defendants; (7) a Bane Act claim pursuant to California Civil Code § 52.1 against Jones, Venus, and Muiruri;

1   (8) a negligence claim against Jones, Venus, and Muiruri; (9) a professional negligence/medical

2   malpractice claim against Venus and Muiruri; and (10) a wrongful death claim against Jones,

3   Venus, and Muiruri.  (ECF No. 15.)  Plaintiffs settled their claims against Venus and Muiruri, and

4   the Court dismissed them from the action pursuant to the parties' stipulation on July 29, 2021.

5   (ECF No. 26.)  The remaining Defendants filed the instant motion for summary judgment on

6   January 31, 2022.  (ECF No. 28.)

7       **II.     STANDARD OF LAW**

8           Summary judgment is appropriate when the moving party demonstrates no genuine issue

9   of any material fact exists and the moving party is entitled to judgment as a matter of law.  Fed.

10  R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Under summary

11  judgment practice, the moving party always bears the initial responsibility of informing the

12  district court of the basis of its motion, and identifying those portions of "the pleadings,

13  depositions, answers to interrogatories, and admissions on file together with affidavits, if any,"

14  which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v.*

15  *Catrett*, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof

16  at trial on a dispositive issue, a summary judgment motion may properly be made in reliance

17  solely on the pleadings, depositions, answers to interrogatories, and admissions on file."  *Id.* at

18  324 (internal quotation marks omitted).  Indeed, summary judgment should be entered against a

19  party who does not make a showing sufficient to establish the existence of an element essential to

20  that party's case, and on which that party will bear the burden of proof at trial.

21          If the moving party meets its initial responsibility, the burden then shifts to the opposing

22  party to establish that a genuine issue as to any material fact does exist.  *Matsushita Elec. Indus.*

23  *Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *First Nat'l Bank of Ariz. v. Cities Serv.*

24  *Co.*, 391 U.S. 253, 288–89 (1968).  In attempting to establish the existence of this factual dispute,

25  the opposing party may not rely upon the denials of its pleadings, but is required to tender

26  evidence of specific facts in the form of affidavits, and/or admissible discovery material, in

27  support of its contention that the dispute exists.  Fed. R. Civ. P. 56(c).  The opposing party must

28  demonstrate that the fact in contention is material, *i.e.*, a fact that might affect the outcome of the

4

1    suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that

2    the dispute is genuine, *i.e.*, the evidence is such that a reasonable jury could return a verdict for

3    the nonmoving party.  *Id.* at 251–52.

4        In the endeavor to establish the existence of a factual dispute, the opposing party need not

5    establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

6    dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

7    trial."  *First Nat'l Bank of Ariz.*, 391 U.S. at 288–89.  Thus, the "purpose of summary judgment is

8    to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for

9    trial.'"  *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (citation omitted).

10       In resolving the summary judgment motion, the court examines the pleadings, depositions,

11   answers to interrogatories, and admissions on file, together with any applicable affidavits.  Fed.

12   R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982).  The evidence

13   of the opposing party is to be believed and all reasonable inferences that may be drawn from the

14   facts pleaded before the court must be drawn in favor of the opposing party.  *Anderson*, 477 U.S.

15   at 255.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

16   obligation to produce a factual predicate from which the inference may be drawn.  *Richards v.*

17   *Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir.

18   1987).  To demonstrate a genuine issue that necessitates a trial, the opposing party "must do more

19   than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita*

20   *Elec. Indus. Co.*, 475 U.S. at 586.  "Where the record taken as a whole could not lead a rational

21   trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Id.* at 587.

22       **III.   ANALYSIS**

23       In moving for summary judgment, Defendants argue: (1) the Sheriff's Department should

24   be dismissed from the case; (2) Plaintiffs have failed to establish a *Monell* claim; (3) Jones should

25   be dismissed from Plaintiffs' failure to protect claim; (4) County Defendants should be dismissed

26   from Plaintiffs' Rehabilitation Act and ADA claims; and (5) County Defendants are entitled to

27   summary judgment on Plaintiffs' state law claims.  (ECF No. 28-1.)  Plaintiffs oppose some of

28   Defendants' arguments and state their non-opposition to others.  (ECF No. 29.)  Plaintiffs also

1    argue the "unavailability of essential facts" precludes summary judgment under Federal Rule of

2    Civil Procedure ("Rule") 56(d).  (*Id.* at 13.)  The Court will first address Plaintiffs' Rule 56(d)

3    argument and then Defendants' arguments.

A.    Rule 56(d)

5    Plaintiffs argue they "cannot present facts essential to justify [their] opposition" pursuant

6    to Rule 56(d).  (ECF No. 29 at 13.)  Plaintiffs contend Defendants failed to produce any

7    documents related to the multiple investigations concerning Debbs's in-custody death where

8    those investigations are "incomplete" and "ongoing."  (*Id.*)  Plaintiffs argue those documents

9    "will be critical evidence in this case."  (*Id.*)  In reply, Defendants argue they have produced the

10   investigation materials and 2,000 additional documents.  (ECF No. 31 at 2–3.)  Defendants also

11   argue Plaintiffs fail to identify the facts needed to successfully oppose the instant motion.  (*Id.*)

12   Rule 56(d) provides: "If a nonmovant shows by affidavit or declaration that, for specified

13   reasons, it cannot present facts essential to justify its opposition, the court may . . . defer

14   considering the motion or deny it."  Fed. R. Civ. P. 56(d).  "To prevail under this Rule, parties

15   opposing a motion for summary judgment must make '(a) a timely application which (b)

16   specifically identifies (c) relevant information, (d) where there is some basis for believing that the

17   information sought actually exists.'"  *Emp'rs Teamsters Local Nos. 175 and 505 Pension Trust*

18   *Fund v. Clorox Co.*, 353 F.3d 1125, 1129–30 (9th Cir. 2004) (citation omitted).  "The burden is

19   on the party seeking additional discovery to proffer sufficient facts to show that the evidence

20   sought exists, and that it would prevent summary judgment."  *Chance v. Pac–Tel Teletrac Inc.*,

21   242 F.3d 1151, 1161 n.6 (9th Cir. 2001).  Further, a court may deny "further discovery if the

22   movant has failed diligently to pursue discovery in the past."  *Cal. Union Ins. Co. v. Am.*

23   *Diversified Sav. Bank*, 914 F.2d 1271, 1278 (9th Cir. 1990) (citations omitted).

24   Plaintiffs fail to meet their burden under Rule 56(d).  Plaintiffs cite the declaration of their

25   counsel, Mark E. Merin ("Merin").  (ECF No. 29-1.)  Merin states it is his "belief that the

26   unproduced and incomplete investigations related to [Debbs's] in-custody death will be critical

27   evidence in this case that could justify Plaintiffs' opposition to Defendants' motion for summary

28   judgment — including, for example, any investigative findings and conclusions related to

6

1    [Debbs's] in-custody death."[2]  (*Id.* at 7.)  Merin's vague, conclusory statement is insufficient, as

2    he does not set forth the particular facts expected from further discovery or explain why those

3    facts would preclude summary judgment.  *Brae Transp., Inc. v. Coopers & Lybrand*, 790 F.2d

4    1439, 1443 (9th Cir. 1986); *Tatum v. City & Cty. of S.F.*, 441 F.3d 1090, 1100 (9th Cir. 2006)

5    (finding a declaration that plaintiff's counsel had not received transcripts of several witness

6    depositions was insufficient under Rule 56(d) because it did not refer to any specific facts in the

7    depositions or explain why the information contained in the depositions would create a genuine

8    issue of material fact); *Terrell v. Brewer*, 935 F.2d 1015, 1018 (9th Cir. 1991) ("Denial of a Rule

9    [56(d)] application is proper where it is clear that the evidence sought is almost certainly

10   nonexistent or is the object of pure speculation.").

11          Accordingly, the Court DENIES Plaintiffs' request to deny or defer ruling on Defendants'

12   motion under Rule 56(d).

13                          B.      Sheriff's Department

14          Defendants argue the Sheriff's Department is not a "person" under § 1983 and is

15   redundant to the County.  (ECF No. 28-1 at 13.)  In opposition, Plaintiffs assert Defendants'

16   arguments have been rejected by the Ninth Circuit.  (ECF No. 29 at 14.)

17          The Court agrees with Plaintiffs.  Recent Ninth Circuit authority makes clear that "both

18   California municipalities and police departments are 'persons' amenable to suit under § 1983."

19   *Duarte v. City of Stockton*, 60 F.4th 566, 568 (9th Cir. 2023).  Therefore, the Court DENIES

20   Defendants' motion for summary judgment on this basis.

21                          C.      Eighth Amendment Claim

22          Defendants argue Plaintiffs' *Monell* claim fails because Plaintiffs cannot establish that one

23   of Defendants' employees committed an underlying Eighth Amendment violation or that an

24   unconstitutional policy was the "moving force" behind a constitutional violation.  (ECF No. 28-1

25   _____

26   [2]      Defendants provide a declaration from defense counsel, Nicole Cahill ("Cahill") to rebut
     Merin's statement about not receiving necessary discovery.  (ECF No. 31-1.)  Cahill asserts
27   Defendants "produced 3,267 documents including, but not limited to, the in-custody death binder,
     the homicide investigation, witness interviews, interview of Christian Ento, CSI photos, and
28   videos of the incident."  (*Id.* at 2.)

at 14–15.)  In opposition, Plaintiffs argue the custom or policy at issue is the jail's use of the P1 cell that lacked adequate audio surveillance and video feed supervision to detain two "gravely disabled" inmates known to be violent, while checking the cell visually only once every half hour. (ECF No. 29 at 15.)

"The Eighth Amendment requires prison officials to protect inmates from violence." *Wilk v. Neven*, 956 F.3d 1143, 1147 (9th Cir. 2020) (citing *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)).  "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834.  "Specifically, a prison official violates an inmate's Eighth Amendment right only if that official is 'deliberately indifferent' — in other words, if the official is subjectively aware of a substantial risk of serious harm to an inmate and disregards that risk by failing to respond reasonably." *Wilk*, 956 F.3d at 1147.

Plaintiffs fail to cite evidence — or even argue — that any specific individual had subjective awareness of a substantial risk of serious harm.  Instead, Plaintiffs describe the actions of "JPS staff" and "custody staff" collectively.  (*See, e.g.*, ECF No. 29 at 14–18.)  Defendants argue the absence of an underlying constitutional violation by one of its employees is fatal to Plaintiffs' claim.  However, the Ninth Circuit has stated "municipal defendants may be liable under § 1983 even in situations in which no individual officer is held liable for violating a plaintiff's constitutional rights" and "constitutional deprivations may occur not . . . as a result of actions of the individual officers, but as a result of the collective inaction of the municipal defendant." *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 604 (9th Cir. 2019) (citing *Fairley v. Luman*, 281 F.3d 913, 917 (9th Cir. 2002)) (internal quotation marks omitted).  While the deliberate indifference standard for an Eighth Amendment claim typically examines the subjective knowledge of the individual officer, "[t]he Supreme Court has strongly suggested that the deliberate indifference standard for municipalities is always an objective inquiry." *Castro v. Cnty. of L.A.*, 833 F.3d 1060, 1076 (9th Cir. 2016); *see Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1248–49 (9th Cir. 2016) (applying an objective deliberate indifference standard for an Eighth Amendment claim against a municipality).

8

Although the Court agrees with Defendants that Plaintiffs' allegations and arguments could be clearer, it appears Plaintiffs challenge Defendants' policies related to the use and monitoring of the P1 cell.  The Ninth Circuit has allowed challenges to similar policies.  *See Castro*, 833 F.3d at 1075 (affirming a judgment against municipal defendants finding that the policy of "us[ing] a sobering cell that lacked adequate audio surveillance to detain more than one belligerent drunk person while checking the cell visually only once every half hour" violated the Fourteenth Amendment); *Horton*, 915 F.3d at 605 ("a reasonable jury might find that the Police Department failed to assure proper monitoring of its security cameras" because an officer "twice told Horton that, if he needed anything, he could simply wave at the security cameras and an officer would come over . . . [b]ut no officer apparently observed Horton looping his belt through the cell door and hanging from it for over twenty minutes.").  As to deliberate indifference, Plaintiffs argue Debbs and Ento's classification as "gravely disabled," their violent histories, and their confinement in a cell together where at least some degree of monitoring took place establish Defendants' objective awareness of a substantial risk of harm.  (ECF No. 29 at 17.)

In arguing there is insufficient evidence of deliberate indifference, Defendants rely on *Labatad v. Corr. Corp. of Am.*, 714 F.3d 1155 (9th Cir. 2013).  (ECF No. 31 at 4.)  In *Labatad*, Labatad sued prison officials after being attacked by his cellmate, Mara, who was a member of a rival gang.  714 F.3d at 1157.  Labatad fought with another member of the same rival gang days before being placed in a cell with Mara.  *Id.*  The district court granted summary judgment in favor of the prison officials, and the Ninth Circuit affirmed on appeal.  *Id.* at 1158.  The Ninth Circuit concluded there was no evidence in the record showing the prison officials knew of a substantial risk in placing Labatad in a cell with Mara because: (1) Labatad and Mara had been in general population together for an extended period with no record of any threats or problems between them; (2) Mara was not listed as a "separatee" for Labatad; (3) and Labatad had assured prison officials that his earlier fight with the other rival gang member was not gang related and that there were no further issues between them.  *Id.* at 1161.

The instant case is distinguishable from *Labatad*.  For example, the prison officials' awareness of the risk in *Labatad* was lessened by Labatad's assurances that the previous fight was

9

1    not gang related — there is no evidence of similar assurances from either Debbs or Ento in the

2    instant case.  Although Debbs and Ento housed together peacefully for 43 days before the

3    incident, most of that time occurred before they were categorized as "gravely disabled."  In fact,

4    Debbs and Ento were not classified as "gravely disabled" until approximately a week before the

5    incident took place on July 8, 2019.  (*See* ECF No. 29-3 at 6 (Debbs was listed as "gravely

6    disabled" on June 30, 2019; Ento was listed as "gravely disabled" on July 4, 2019).)  The

7    evidence suggests Dr. Roof labeled Debbs as "gravely disabled" because Debbs regularly refused

8    medication to treat his schizophrenia.  (ECF No. 28-3 at 7.)  It is unclear what led Dr. Roof to

9    label Ento as "gravely disabled" or what mental health conditions Ento suffered from.  While Dr.

10   Roof summarily states he determined that neither Debbs or Ento met the criteria for "danger to

11   self" or "danger to others," it is unclear how Dr. Roof arrived at that determination.  (*Id.*)  A

12   reasonable jury could find that the foregoing evidence supports a reasonable inference that

13   Defendants knew or should have known that there was an increased risk of harm in continuing to

14   house Debbs and Ento together after they had been deemed "gravely disabled."

15         Moreover, it is also undisputed that there were monitoring policies in place, including in-

16   cell video surveillance, which leads to the inference that Defendants knew monitoring the unit

17   was necessary to mitigate the risk of harm.  (ECF No. 29-3 at 7 (stating "[c]ustody staff conducts

18   cell checks once every hour on the 2P unit, which requires a visual observation of the inmates in

19   each cell to ensure the inmate is alive and not in any acute distress" and "[t]he psychiatrist may

20   order visual observation by JPS staff on the 2P inmates every 30 minutes or every 15 minutes

21   depending on clinical need, which may be supplemented with closed-circuit television

22   monitoring.").  A reasonable jury could find that Defendants knew or should have known that

23   those monitoring policies were inadequate when housing two "gravely disabled" inmates together

24   in the P1 cell — the only two-person cell in the unit.[3]  *See Castro*, 833 F.3d at 1077 (efforts

---

25   [3]        Plaintiffs argue the County is liable for JPS's policies.  (ECF No. 29 at 15 (citing *O'Neal*
26   *v. Las Vegas Metro. Police Dep't*, No. 2:17-CV-02765-APG-GWF, 2018 WL 4088002, at *4 (D.
     Nev. Aug. 27, 2018) ("[The] County remains liable for any constitutional deprivations caused by
27   the policies, practices, or customs of its contractor"); *West v. Atkins*, 487 U.S. 42, 56 (1988)
     ("Contracting out prison medical care does not relieve the State of its constitutional duty to
28   provide adequate medical treatment to those in custody, and it does not deprive the State's

1  "aimed at mitigating the risk of serious injury to individuals" may suggest the County "knew of

2  the risk of the very type of harm that befell" the plaintiff).

3       In sum, a reasonable jury could conclude Defendants knew or should have known their

4  policies created a substantial risk of serious harm to persons detained in the P1 cell and were

5  deliberately indifferent to that risk.  A reasonable jury could also conclude Defendants' policies

6  caused Debbs's injury.  *Id.* at 1075–76 ("Had the entity defendants provided consistent

7  monitoring, or had the entity defendants required Castro and his attacker to be housed in different

8  locations, which were available, [the] attack on Castro could have been averted.").

9       Accordingly, the Court DENIES Defendants' motion for summary judgment as to

10  Plaintiffs' Eighth Amendment claim.

11                D.     <u>Jones</u>

12       Defendants argue there is no evidence Jones was involved in any decision made with

13  respect to Debbs that caused injury.  (ECF No. 28-1 at 16.)  In opposition, Plaintiff state they "do

14  not oppose dismissal of the § 1983 claims against Sheriff Jones."  (ECF No. 29 at 18.)  Based on

15  Defendants' arguments and Plaintiffs' non-opposition, the Court GRANTS Defendants' motion

16  for summary judgment as to the § 1983 claims against Jones.

17                E.     <u>Rehabilitation Act and ADA claims</u>

18       Defendants argue they should be dismissed from Plaintiffs' Rehabilitation Act and ADA

19  claims because there is no service, program, or activity that Debbs was denied by virtue of his

20  disability.  (ECF No. 28-1 at 18.)  In opposition, Plaintiffs state they "do not oppose dismissal" of

21  these claims.  (ECF No. 29 at 18–19.)  Based on Defendants' arguments and Plaintiffs' non-

22  opposition, the Court GRANTS Defendants' motion for summary judgment as to the

23  Rehabilitation Act and ADA claims.

24  ///

25  ///

26

27  _____

   prisoners of the means to vindicate their Eighth Amendment rights.").)  Defendants fail to
   respond to this argument in their reply.

28

1          F.        State Law Claims

2                    i.        *Failure to Summon Medical Care*

3          Defendants argue there is no evidence a County employee was aware of a serious medical

4   need and failed to summon care as required for a California Government Code § 845.6 ("§

5   845.6") claim.  (ECF No. 28-1 at 19.)  In opposition, Plaintiffs argue the County is liable for this

6   claim, but Plaintiffs do not oppose dismissal of the claim as to Jones.  (ECF No. 29 at 19–20.)

7          Section 845.6 provides, in relevant part:

8                    Neither a public entity nor a public employee is liable for injury
                     proximately caused by the failure of the employee to furnish or
9                    obtain medical care for a prisoner in his custody; but, . . . a public
                     employee . . . is liable if the employee knows or has reason to know
10                   that the prisoner is in need of immediate medical care and he fails to
                     take reasonable action to summon such medical care.
11
12         To prove a claim under § 845.6, a prisoner must establish three elements: "(1) the public

13   employee knew or had reason to know of the need (2) for immediate medical care, and (3) failed

14   to reasonably summon such care."  *Jett v. Penner*, 439 F.3d 1091, 1098–99 (9th Cir. 2006).

15         As the Court has already discussed, there are triable issues as to whether the County had

16   reason to know sooner that Debbs needed immediate medical care.  The factfinder should

17   determine whether these circumstances establish a violation of § 845.6.  *Jett*, 439 F.3d at 1099;

18   *see also Horton*, 915 F.3d at 608 ("Questions about jail personnel's actual or constructive

19   knowledge of a prisoner's need for immediate medical care as well as the reasonableness of

20   actions taken to meet this need are factual questions.").

21         Accordingly, the Court DENIES Defendants' motion for summary judgment as to the

22   failure to summon medical care claim.

23                   ii.        *Bane Act*

24         Defendants argue the Bane Act claim against Jones should be dismissed because there is

25   no evidence Jones took any actions toward Debbs.  (ECF No. 28-1 at 19.)  In opposition,

26   Plaintiffs state they "do not oppose dismissal of the Bane Act claim" against Jones.  (ECF No. 29

27   at 20.)  Based on Defendants' arguments and Plaintiffs' non-opposition, the Court GRANTS

28   Defendants' motion for summary judgment as to the Bane Act claim.

1                                    *iii.*      *Negligence*

2              Defendants argue Plaintiffs' negligence claim against Jones is barred by California

3    Government Code §§ 820.2 and 820.8.  (ECF No. 28-1 at 19–20.)  In opposition, Plaintiffs argue

4    § 820.8 does not apply because they do not claim Jones is vicariously liable for the actions of

5    others.  (ECF No. 29 at 21.)  Plaintiffs also argue § 820.2 does not apply because the negligence

6    claim is based on Jones's breach of his duty to maintain prisoners' safekeeping in the jail he

7    operates, which is not a discretionary act.  (*Id.*)

8              Section 820.2 states "[e]xcept as otherwise provided by statute, a public employee is not

9    liable for an injury resulting from his act or omission where the act or omission was the result of

10   the exercise of the discretion vested in him, whether or not such discretion be abused."  Cal.

11   Gov't Code § 820.2.  Defendants bear the burden of establishing that they are entitled to

12   immunity for an actual policy decision made by an employee who "consciously balanc[ed] risks

13   and advantages . . .."  *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 639 (9th Cir. 2012)

14   (citation omitted); *Steinle v. City & Cnty. of S.F.*, 919 F.3d 1154, 1161 (9th Cir. 2019) (explaining

15   that to be entitled to § 820.2 immunity, there must be a showing that the specific conduct giving

16   rise to the suit involved the actual exercise of discretion).

17            Defendants' conclusory argument on this issue is insufficient.  *See Mollica v. Cnty. of*

18   *Sacramento*, No. 2:19-CV-02017-KJM-DB, 2023 WL 3481145, at *15 (E.D. Cal. May 16, 2023)

19   ("Defendant cannot meet his burden through his conclusory argument simply that he is entitled to

20   immunity").  Defendants fail to develop their argument or point to evidence showing that

21   Plaintiffs' negligence claim challenges an actual policy decision made by Jones who consciously

22   balanced risks and advantages.  *AE ex rel. Hernandez*, 666 F.3d at 639.   For their part, Plaintiffs

23   cite a case from this district wherein a court found that the classification and placement of an

24   inmate was not subject to § 820.2 immunity.  *See Phillips v. Cnty. of Fresno*, No. 1:13-CV-0538

25   AWI BAM, 2013 WL 6243278, at *15 (E.D. Cal. Dec. 3, 2013) ("[T]he considerations necessary

26   to prevent harm to Decedent during the term of his pretrial detention were ministerial in nature,

27   not discretionary.").  Based on the minimal briefing on this issue, Defendants fail to persuade the

28   Court that § 820.2 bars Plaintiffs' negligence claim as a matter of law.

                                                        13

1    As such, the Court DENIES Defendants' motion for summary judgment as to Plaintiffs'

2  negligence claim.

3              *iv.*      *Wrongful Death*

4    Defendants argue because Plaintiffs have no viable theory under state law, the wrongful

5  death claim also fails.  (ECF 28-1 at 20.)  Because the Court has found Plaintiffs have potentially

6  viable claims, the Court DENIES Defendants' motion for summary judgment as to the wrongful

7  death claim on that basis.

8    **IV.    CONCLUSION**

9    For the foregoing reasons, the Court GRANTS in part and DENIES in part Defendants'

10  Motion for Summary Judgment (ECF No. 28) as follows:

11    1.  The Court DENIES Defendants' request to dismiss the Sheriff's Department from this

12        action;

13    2.  The Court DENIES Defendants' motion as to the § 1983 claim (Claim One) against the

14        County and Sheriff's Department;

15    3.  The Court GRANTS Defendants' motion as to the § 1983 claim (Claim One) against

16        Jones;

17    4.  The Court GRANTS Defendants' motion as to the Rehabilitation Act and ADA claims

18        (Claims Four and Five);

19    5.  The Court DENIES Defendants' motion as to the § 845.6 claim (Claim Six) against the

20        County and Sheriff's Department;

21    5.  The Court GRANTS Defendants' motion as to the § 845.6 claim (Claim Six) against

22        Jones;

23    6.  The Court GRANTS Defendants' motion as to the Bane Act claim (Claim Seven);

24    7.  The Court DENIES Defendants' motion as to the negligence claim (Claim Eight); and

25    8.  The Court DENIES Defendants' motion as to the wrongful death claim (Claim Ten).

26  ///

27  ///

28  ///

14

1   The parties are ORDERED to file a Joint Status Report within thirty (30) days of the

2   electronic filing date of this Order indicating their readiness to proceed to trial on Plaintiffs'

3   remaining claims and proposing trial dates.

4   IT IS SO ORDERED.

5   Date: June 20, 2023

6

7

8   _____

Troy L. Nunley
United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28